UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEMBERG LAW LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TAMMY HUSSIN, et al.,<br><br>    Defendants. | Case No. 16-mc-80066-JCS<br><br>**ORDER GRANTING MOTION TO QUASH AND MOTION FOR PROTECTIVE ORDER**<br><br>Re: Dkt. No. 1 |

## I. INTRODUCTION

Cory Horton moves to quash a subpoena issued by Lemberg Law, LLC that would require him to testify at a deposition and produce communications with Tammy Hussin pertaining to a class action where Horton is the lead plaintiff. Hussin is an attorney formerly associated with Lemberg Law; both Hussin and Lemberg Law formerly represented Horton in the class action. The litigation underlying the present subpoena, however, is a case in the District of Connecticut between Hussin and Lemberg Law, where Horton is not a party. Horton contends that the subpoena should be quashed because it is procedurally defective, unduly burdensome, and seeks privileged information. The Court agrees that there is no reason to believe that the discovery Lemberg Law seeks would lead to relevant, non-privileged information, and therefore GRANTS Horton's Motion.

## II. BACKGROUND

### A. The Connecticut Action

The action for which Lemberg Law seeks discovery, which is currently venued in the District of Connecticut but slated to be transferred to the Southern District of California unless a pending motion for reconsideration is granted, arises from the dissolution of a cross-country professional relationship among lawyers. *See generally Lemberg Law, LLC v. Hussin*, No. 3:15-

1  cv-0737-MPS (D. Conn.). Plaintiff Lemberg Law LLC—a Connecticut firm with a single
2  member, Sergei Lemberg—represents plaintiffs in consumer protection actions throughout the
3  country. Terrell Decl. Ex. 2 (Complaint) ¶¶ 5−7. Lemberg Law sometimes contracts with local
4  attorneys to bring cases in jurisdictions outside Connecticut, as it did with Defendant Tammy
5  Hussin in California. *See id.* ¶¶ 10−11. Hussin was integrated in Lemberg Law's operations, with
6  remote access to Lemberg Law's computer system, a telephone connected to Lemberg Law's
7  office telephone system, and management responsibilities over other Lemberg Law "of-counsel"
8  lawyers. *Id.* ¶¶ 14−17.

9  In early 2014, Hussin established her own law firm, Defendant Hussin Law, and negotiated
10 a separation agreement with Lemberg Law, which—according to Lemberg Law—called for
11 Hussin to continue working on certain Lemberg Law cases subject to a division of attorneys' fees,
12 including some cases that had not yet been filed. *Id.* ¶¶ 30−34. Lemberg Law alleges that Hussin
13 failed to prosecute the not-yet-filed cases adequately, wrongfully accessed proprietary materials on
14 Lemberg Law's computer servers, marketed herself to Lemberg Law's current and former clients,
15 and failed to provide Lemberg Law its share of settlement payments in cases that Hussin worked
16 on. *Id.* ¶¶ 39−49.

17 In her affirmative defenses and counterclaims, Hussin alleges that Lemberg Law used
18 Hussin's signature without her knowledge, failed to pay her the agreed fees, deducted illegitimate
19 costs from clients' settlements, caused cases to be filed on behalf of individuals who never agreed
20 to be represented by Lemberg Law or Hussin, and wrongfully used Hussin's name to advertise
21 Lemberg Law to California clients. SAA[1] Affirmative Defenses ¶¶ 1(a)−(y). She also alleges that
22 Lemberg Law obtained some of its clients through an agreement with a third-party company that
23 sold a product allowing individuals to report unwanted marketing calls to the Federal Trade
24 Commission ("FTC"), and that when Lemberg Law marketed its services to them, many of those

---

[1] Lemberg Law correctly notes that the version of Hussin's Answer and Counterclaims that Horton submits here has been superseded. Hussin's operative Second Amended Answer, Affirmative Defenses, and Counterclaims ("SAA") appears as docket entry 48 in *Lemberg Law, LLC v. Hussin*, No. 3:15-cv-0737-MPS (D. Conn. Jan. 7, 2016). Although Lemberg Law declined to place that document in the record here, it is subject to judicial notice as a public record.

clients believed that they were speaking to the FTC or to a law firm acting on behalf of the FTC, rather than a law firm intending to bring legal action on their behalf. *Id.* Counterclaim ¶¶ 8−29. When Hussin became aware of those solicitation practices, she voiced her discomfort to Sergei Lemberg, and their professional relationship began to deteriorate. *See, e.g.*, *id.* ¶¶ 43−47.

The following paragraphs of the counterclaim portion of Hussin's Second Amended Answer discuss the class action where Horton is lead plaintiff:

> 122. On or about May 30, 2014, Hussin confronted Lemberg with all of her findings of wrongdoings. In an email Hussin identified in detail each of Lemberg's unfair and unlawful acts. Hussin demanded in the email that Lemberg reimburse clients for any charges which were not incurred by Lemberg, and insisted that Lemberg provide her with an accounting of what was owed to Hussin. Hussin also advised Lemberg in the email she was no longer comfortable sponsoring Lemberg in the Horton Class Action and demanded his withdrawal from the case.
>
> 123. Lemberg thereafter began threatening Hussin with financial ruin and repeatedly demanded that she withdraw from the Horton Class Action.
>
> 124. Lemberg repeatedly assured Hussin if she withdrew from the Horton Class Action, she would receive her 20% entitlement to the attorneys fee if and when the case resolved.
>
> 125. Hussin determined the only way to obviate Lemberg's threats was to withdraw from the Horton Class Action.
>
> 126. On June 12, 2014, Lemberg told Hussin again to get out of the Horton Class Action. Lemberg wrote: ["]You will still get your 20% but I don't want any dealings with you on that case."
>
> 127. Based on Lemberg's assurance, Hussin thereafter withdrew from Horton Class Action.
>
> 128. Upon Hussin withdrawing from the Horton Class Action, Lemberg immediately stopped threatening Hussin.
>
> [. . .]
>
> 137. In May of 2015, Hussin discovered the Horton Class Action may be near settlement, and advised Lemberg via email she anticipated to receive her agreed upon 20% of the case.
>
> 138. As soon as Hussin reasserted her interest in the Horton Class Action, Lemberg renewed his threats to sue Hussin and as a result filed this action against Hussin to cause her to forego her portion of any fees earned in the Horton matter.

*Id.* ¶¶ 122−28, 137−38.

3

Hussin further alleges that Lemberg breached his contract with Hussin "[b]y coercing Hussin into withdrawing from the Horton Class Action, while promising in writing Hussin would still get her 20%, and thereafter refusing to acknowledge his written agreement regarding Hussin's entitlement to fees in the Horton Class Action, and then filing this suit in retaliation for Hussin recently asserting her entitlement." *Id.* ¶ 140(j). She also claims that the Connecticut action is itself an abuse of process filed "as a guise to attempt to improperly scare and stop Hussin from asserting her entitlement in the Horton Class Action," among other improper motives. *Id.* ¶ 178.

The record in the Connecticut action demonstrates animosity between the parties, with each side seeking sanctions against the other. The court granted Hussin's motion to transfer the case to the Southern District of California, but Lemberg Law's motion for reconsideration of that order is currently pending. A motion to dismiss Hussin's second amended answer and counterclaims is also pending; assuming that the transfer order stands, the motion to dismiss will presumably be decided by the Southern District of California.

### B. The Horton Class Action

The class action in which Horton is a lead plaintiff is one of many cases at issue in the Connecticut action between Hussin and Lemberg Law. *See generally Horton v. Cavalry Portfolio Servs., LLC*, No. 3:13-cv-0307-JAH-WVG (S.D. Cal.). In the class action, Horton alleges on behalf of himself and similarly situated individuals that Cavalry Portfolio Services used automated dialing systems and prerecorded messages to call cellular telephones in violation of the Telephone Consumer Protection Act. *See id.* ECF Doc. No. 1 (Complaint). When Horton initiated the action in February of 2013, he was represented by Hussin, who was then an attorney with Lemberg Law (then known as Lemberg & Associates, LLC). *See id.* Sergei Lemberg appeared as co-counsel *pro hac vice* later that year. *Id.* ECF Doc. No. 12. Litigation included discovery disputes, a contested motion by Cavalry to amend its answer and counterclaims, and a motion for sanctions by Cavalry after Horton's counsel failed to disclose until after the deadline for a refund that Horton was away at sea and would not be able to attend a private mediation session in person. (The court denied the motion for sanctions.)

Hussin withdrew from the case in June of 2014, citing irreconcilable differences with

4

Sergei Lemberg. *Id.* ECF Doc. No. 58. On December 10, 2015, Horton filed a "designation of new attorney" indicating that he had terminated his relationship with Lemberg and with Lemberg Law, and that his new attorney was Beth Terrell. *Id.* ECF Doc. No. 195.

In February of 2016, Sergei Lemberg and another Lemberg Law attorney filed a motion to intervene on behalf of Kevin Krejci, who is also the plaintiff in a separate class action against Cavalry also in the Southern District of California, initiated in January of 2016. *Id.* ECF Doc. No. 200; *see also Krejci v. Cavalry Portfolio Servs, LLC*, No. 3:16-cv-0211-JLS-WVG (S.D. Cal.). Rather than reach that motion, as well as pending motions for class certification and summary judgment, the court granted Cavalry's motion to stay the case pending resolution of litigation in the D.C. Circuit regarding the validity of an FCC ruling that would affect the outcome of Horton's claims. *Horton*, ECF Doc. No. 202.

Following entry of the stay, Sergei Lemberg and his former co-counsel Stephen Taylor applied to withdraw two declarations previously filed in the case, stating cryptically that "certain facts have come to light that cast significant doubt on the propriety of the declarations," and requesting leave to submit additional information under seal should the court require more information. *Id.* ECF Doc. No. 204. The court recently denied that application without prejudice. *Id.* ECF Doc. No. 211.

**C.    The Subpoena and the Parties' Present Arguments**

Lemberg Law served a subpoena on Cory Horton dated February 25, 2016 commanding him to appear for a deposition and to produce "[a]ny and all communicatiosn [sic] by and between [Horton] and Tammy Hussin pertaining to the case Horton v. Cavalry Portfolio Services, LLC, Case No.: 3:13-cv-0307-JAH-WVG, between June 19, 2014 and December 15, 2015." Terrell Decl. (dkt. 4) Ex. 1. The starting date for document production—June 19, 2014—coincides with Hussin's motion to withdraw from the Horton case, and falls one day before the court granted that motion. *See Horton*, ECF Doc. Nos. 57−59.

**1.    Horton's Motion**

Horton moves to quash the subpoena on the grounds that: (1) Lemberg Law failed to comply with Rule 45(b)(1) of the Federal Rules of Civil Procedure, which requires a party serving

a subpoena to tender fees to the recipient, Mot. (dkt. 1) at 6; (2) the subpoena seeks documents protected by the attorney-client privilege, *id.* at 7−8; and (3) compliance would be unduly burdensome for Horton, *id.* at 8−9.  For his privilege argument, Horton asserts that he maintained an attorney-client relationship with Hussin as to other matters after she withdrew from his case against Cavalry, continued to consult with her on the Cavalry case even after she withdrew, and sought her advice in selecting new counsel, all of which is consistent with Hussin's deposition testimony in the Connecticut case.  *Id.* at 7; Terrel Decl. Ex. 4 (Hussin Dep.) 100:3−13, 105:2−14.  According to Horton, he "reasonably believed that all such communications with [Hussin] were confidential communications made within the scope of the attorney-client relationship," and accordingly none of the documents or communications that Lemberg Law seeks are discoverable.  Mot. at 7−8.  As for burden, Horton argues that the information Lemberg Law seeks can more properly be obtained from Hussin, who (unlike Horton) is a party to the Connecticut action, and also that Lemberg's tactics in the Cavalry case—representing a different client seeking to intervene after Horton terminated his relationship with Lemberg Law, and unsuccessfully seeking to withdraw declarations previously filed on Horton's behalf—evince a pattern of retaliatory harassment.  *Id.* at 8−9.  Horton also seeks a protective order "to prevent further attempts by Lemberg Law to discover privileged information."  *Id.* at 9−10.

### 2. Lemberg Law's Opposition

Lemberg Law responds that the original subpoena has been withdrawn and a new one issued with a proper tender of witness fees, thus curing that procedural defect.  Opp'n (dkt. 6) at 2, 6.  With respect to the privilege issue, Lemberg Law argues that not all communications between an attorney and a client are privileged, and "'[b]lanket assertions [of the privilege] are extremely disfavored.'"  *Id.* at 7 (quoting *United States v. Martin*, 278 F.3d 988, 1000 (9th Cir. 2002)) (second alteration in Opposition; third-level quotation marks and citation omitted).  As examples of non-privileged communication, Lemberg Law vaguely cites "business advice or other non-legal advice."  *Id.* (citing *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1076 (N.D. Cal. 2002).  According to Lemberg Law, "the only way Horton can properly meet his burden is by asserting the privilege in response to specific questions asked at the deposition."  *Id.* at 8.

1    Turning to the issue of burden, Lemberg Law contends that "Horton has not produced any
2    evidence that these communications are indeed in Hussin's control, and he cannot definitively
3    determine that every single piece of information sought from him can be obtained from Hussin."
4    *Id.* at 9. Lemberg Law further argues that Horton's testimony and records are relevant because:
5    (1) Lemberg Law believes that Hussin "wrongfully constructed a transfer of the [Horton] case
6    away from Lemberg Law and to the Terrell firm"; (2) Hussin seeks a percentage of fees that
7    Lemberg Law expects to recover in the Horton case; (3) fee arrangements generally are not
8    privileged; and (4) "Horton's name appears in Hussin's Second Amended Counterclaim no less
9    than a dozen times." *Id.* at 10−11 (citing *In re Michaelson*, 511 F.2d 882, 888 (9th Cir. 1975), for
10   the proposition that fee arrangements are not privileged). According to Lemberg Law, "Horton
11   has failed to show any actual burden that would be caused by his attendance at a deposition." *Id.*
12   at 11.

### 3. Horton's Reply

14   Horton argues in his Reply he "has met his burden of making a *prima facie* showing that
15   <u>all</u> of the relevant testimony he could offer in this matter in privileged." Reply (dkt. 7) at 1.
16   According to Horton, the only relevant issue on which Lemberg Law seeks to question him is his
17   discussions with Hussin about obtaining new counsel, and such discussions constitute privileged
18   legal advice. *Id.* at 1−2. Horton contends that any discussions about fee arrangements are not
19   relevant, because the material question is not his fee agreement with his attorneys but rather how
20   Lemberg Law and Hussin agreed to divide any attorneys' fees, and Lemberg Law has not
21   explained why Horton would be able to testify as to that issue. *Id.* at 4. Citing decisions from
22   other districts, Horton argues that a party seeking documents from a non-party usually must show
23   that such documents cannot be obtained from a party to the case, particularly where the documents
24   consist of communications with a party. *Id.* at 3−4 (citing, *e.g.*, *Arista Records LLC v. Lime Grp.*
25   *LLC*, No. 2:10-cv-2074-MJP, 2011 WL 679490, at *2 (W.D. Wash. Feb. 9, 2011)). In Horton's
26   view, the lack of relevant, non-privileged testimony that Horton could provide, the likelihood that
27   Lemberg Law could obtain any responsive non-privileged communications directly from Hussin,
28   and Lemberg Law's purported pattern of harassing Horton after he decided to change counsel in

the class action all demonstrate that the subpoena constitutes an undue burden. *See id.* at 3−5.

Horton acknowledges that Lemberg Law has served him with a new subpoena in an attempt to cure its previous failure to tender witness fees, and appears to acknowledge that Lemberg Law tendered the appropriate fees when serving that second subpoena. *See id.* at 5 & Brown Decl. (dkt. 8) ¶ 4. Apparently contending that Lemberg Law cannot unilaterally withdraw the first subpoena, however, Horton argues that the Court should quash the first subpoena for failure to tender witness fees and should also reach the questions of privilege and burden. *Id.* at 5−6 (citing authority holding that failure to tender fees at the time of service cannot be cured by a later tender of fees). Horton also restates his request for a protective order and notes that Lemberg Law's Opposition does not address that issue separately from its arguments as to why the subpoena should stand. *Id.* at 6.

## III. ANALYSIS

### A. Legal Standard

Discovery in civil cases is limited to "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 45 of the Federal Rules of Civil Procedure provides in relevant part that "the court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). "The Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-cv-1967-CW-NC, 2012 WL 4846522, at *2 (N.D. Cal. Aug. 7, 2012) (citing *United States v. C.B.S., Inc.*, 666 F.2d 364, 371−72 (9th Cir. 1982)). "On a Rule 45 motion to quash a subpoena, the moving party has the burden of persuasion, but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Pers. Audio LLC v. Togi Entm't, Inc.*, No. 14-MC-80025 RS (NC), 2014 WL 1318921, at *2 (N.D. Cal. Mar. 31, 2014).

Although blanket assertions of privilege are disfavored, *see Martin*, 278 F.3d at 1000 (considering a motion to suppress evidence in a criminal case), Rule 45 explicitly instructs that a

court must quash a subpoena that seeks disclosure of privileged material, *see* Fed. R. Civ. P. 45(d)(3)(A)(iii), and courts have done so where the issuing party fails to explain "what non-privileged, relevant information [the witness] could offer," *Unigene Labs., Inc. v. Apotex, Inc.*, No. C 07-80218 SI, 2007 WL 2972931, at *3 (N.D. Cal. Oct. 10, 2007). *See also Trunk v. City of San Diego*, No. 06 CV 1597 LAB (WMc), 2007 WL 2701356, at *7 (S.D. Cal. Sept. 13, 2007) (quashing subpoena where the issuing party could at most perhaps "craft a few relevant and meaningful deposition questions that did not run afoul of" the attorney client privilege to obtain an "extremely limited amount of historical information"), *objections overruled*, 2007 WL 3001679 (Oct. 11, 2007).

### B. Failure to Tender of Fees

Lemberg Law and Horton essentially agreed in their briefs that the original subpoena was defective for failure to tender fees, but also that the Court should not treat that defect as a reason not to reach the remaining issues of privilege, relevance, and burden. Their preferred avenues for reaching the remaining issues differed: Lemberg Law asked the Court to treat its service of a second subpoena as having "cured" the defect in the original subpoena, Opp'n at 6 while Horton contended that the original subpoena could not be cured and must instead be quashed for failure to tender fees, and that in doing so the Court should also reach the remaining issues and Horton's request for a protective order, *see* Reply at 5−6. At the hearing, the parties agreed that the Court could quash the initial subpoena and deem Horton's Motion and the parties' arguments applicable to the second subpoena, which Lemberg Law properly served with a tender of fees. The first subpoena is therefore QUASHED, and the remainder of this Order addresses the second subpoena.

### C. Recommendation Regarding Privilege and Burden

Lemberg Law argues that Horton cannot assert the attorney-client privilege except as to specific documents or deposition questions. The Court disagrees. That approach would virtually nullify Rule 45(d)(3)(A)(iii), which *requires* the Court to quash a subpoena that "requires disclosure of privileged or other protected matter," and would be inconsistent with cases where courts have quashed deposition subpoenas that appear to be targeted at privileged subject matter. *See, e.g.*, *Unigene Labs.*, 2007 WL 2972931, at *3; *Trunk*, 2007 WL 2701356, at *7. Even though

9

the time period for the subpoena begins with Hussin's withdrawal from the case, it asks Horton to disclose communications with his attorney about a case where she (formerly) represented him. Horton states in his declaration that he understood all such communications to be confidential. Horton Decl. ¶ 7. Hussin testified at a deposition in the Connecticut litigation that she continued to serve as Horton's attorney after she withdrew from the class action. Terrell Decl. Ex. 4 (Hussin Dep.) 100:11−13 ("Just because I withdrew from the Horton/Cavalry case, I never withdrew from being [Horton]'s attorney."). Taken together, Horton has established a prima facie case that the communications were privileged.

Lemberg Law's Opposition identified only one specific category of information as purportedly not privileged: communications regarding the fee arrangement in the Horton class action. Opp'n at 10 (citing *In re Michaelson*, 511 F.2d at 888). Horton does not argue that such material would be privileged, but instead contends that his knowledge of the subject is not relevant because the dispute over the fee provision pertains to how Hussin and Lemberg Law agreed to divide fees, not the overall fees that Horton agreed to pay his attorneys. Reply at 4. He also argues that any documents he might have on the subject would be duplicative to what Lemberg Law could obtain from Hussin, who—unlike Horton—is a party to the underlying case. *Id.* at 3−4.

Lemberg Law did not meaningfully address those points at the hearing, instead changing course to argue that it should be able to obtain communications regarding Horton's decision to fire Lemberg Law and retain Beth Terrell as his attorney in the class action. According to Lemberg Law, such communications would not be privileged if Hussin initiated conversations on the subject out of her own desire to harm Lemberg Law. In the Court's view, however, advice as to choice of counsel falls squarely within the scope of the attorney-client privilege.

Lemberg Law contended at the hearing that it should nevertheless be permitted to take Horton's deposition, because threshold questions—such as who initiated the relevant telephone calls, what the subject matter of the discussion was, and whether Horton understood the communications to be confidential and privileged as part of an attorney-client relationship—might reveal that the communications were not in fact privileged. The Court agrees that those threshold

questions do not themselves seek privileged information. There is no reason to believe, however, that Horton's answers would change the Court's privilege analysis as to his underlying communications with Hussin regarding the decision to change counsel. Who initiated a telephone call is not relevant to the question of privilege, and Horton has already stated in his declaration that he understood his conversations with Hussin regarding the class action to be privileged. *See* Horton Decl. ¶ 7. Under the circumstances presented here, allowing Lemberg Law to take Horton's deposition based on Lemberg Law's pure speculation that Horton would contradict that sworn statement is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Lemberg Law did not identify any other threshold questions at the hearing that would be likely to undermine Horton's invocation of attorney-client privilege as to the communications with Hussin that Lemberg Law seeks. Horton's Motion to Quash and Motion for Protective Order is therefore GRANTED.[2]

## IV.  CONCLUSION

For the reasons discussed above, the Court holds that Lemberg Law's subpoena seeks privileged information, and GRANTS Horton's Motion. Both of the subpoenas that Lemberg Law has served on Horton are quashed. Further, the Court hereby enters a protective order barring Lemberg Law from further attempts to obtain Horton's communications with Hussin through discovery.

**IT IS SO ORDERED.**

Dated: June 13, 2016

JOSEPH C. SPERO
Chief Magistrate Judge

---

[2] Following the hearing, Lemberg Law requested that the Court stay its ruling on Horton's Motion because Lemberg Law has filed a motion to compel arbitration in the Connecticut action. *See* dkt. 17. Horton opposes the request for a stay, *see* dkt. 18, and the Court finds no reason why the possibility of arbitration should forestall a ruling on the issues presented. Lemberg Law's request is DENIED.